UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI RUNKLE,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. ED CV 09-1983 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), granting her application for Disability Insurance benefits ("DIB") as of October 1, 2008. Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he: 1) determined that Plaintiff could perform her past relevant work prior to October 1, 2008; 2) rejected the opinion of her treating physician; and 3) determined Plaintiff's residual functional capacity for the period prior to October 1, 2008. For the reasons explained below, the Court affirms the Agency's decision.

## II. BACKGROUND

Plaintiff applied for DIB in 2004, alleging that she had been unable to work since November 2003, due to chronic fatigue syndrome and high blood pressure. (Administrative Record ("AR") 51-54, 70-71.) Following a hearing, the ALJ issued a decision denying benefits on July 27, 2006. (AR 14-20.) After the Appeals Council denied Plaintiff's request for review (AR 4-6), Plaintiff appealed to this court. The Court reversed and remanded the ALJ's decision for further proceedings. Following another hearing, the ALJ issued a decision finding Plaintiff disabled as of October 1, 2008. (AR 347-55.) Plaintiff then commenced this action.

## III. ANALYSIS

A. <u>The ALJ Properly Determined Plaintiff Could Perform Her Past Relevant Work Prior to October 1, 2008</u>

In her first claim of error, Plaintiff argues that the ALJ failed to make specific findings of fact in determining that she could perform her past relevant work prior to October 1, 2008. (Joint Stip. 3-5, 7-8.) In Plaintiff's view, this ran counter to the requirements of Social Security Ruling ("SSR") 82-62. For the following reasons, the Court disagrees.

The issue at step four of the sequential evaluation process is whether the claimant can perform her past relevant work. This step involves two considerations. First, what is the claimant capable of doing, both physically and mentally? And, second, what physical and mental abilities are required to perform the past relevant work, either as the claimant performed it or as it is generally performed in the workplace? *See Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001); 20 C.F.R. § 404.1520(f).

The determination of what a claimant can do physically and mentally--the claimant's residual functional capacity--is based on the medical and other evidence in the record. *Pinto,* 249 F.3d at 844-45. The ALJ can rely on several sources to determine what is required to perform the claimant's prior work, including the claimant's own explanation as to how she performed it, a vocational expert's testimony as to how the work was performed by the claimant or how it is generally performed in the economy, and the Dictionary of Occupational Titles ("DOT"), which contains a description of the physical and mental demands of jobs. *Id.* at 845-46.

In this case, the ALJ first determined that, prior to October 1, 2008, Plaintiff had the residual functional capacity to perform light work with certain postural, environmental, and other limitations. (AR 349.) The ALJ then relied on vocational expert testimony (from the 2006 administrative hearing) that a hypothetical person of Plaintiff's age, education, work experience, and residual functional capacity could perform Plaintiff's prior occupation of unit secretary at a hospital prior to October 1, 2008. (AR 323-24.) The vocational expert also provided an exhibit specifying that DOT No. 245.362-014 described Plaintiff's job as a unit secretary. (AR 116; *see* AR 323.) The vocational expert at the 2009 administrative hearing agreed that this DOT section (245.362-014) applied to Plaintiff's past work. (AR 511, 651-53.)

Plaintiff contends that this was not enough. In her view, the ALJ should have analyzed each physical and mental skill necessary to perform the job of unit secretary and then compared those skills with Plaintiff's mental and physical abilities as set forth in the ALJ's residual functional capacity findings. The Court rejects this

argument. The vocational expert was not required to testify about each and every physical and mental skill needed to perform the job and match it with each of Plaintiff's physical and mental capabilities. *Pinto*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations above."). In the hypothetical question to the vocational expert at Plaintiff's first hearing, the ALJ set out Plaintiff's limitations, which the vocational expert presumably took into account along with the demands of the job of unit secretary in opining that Plaintiff could perform her past work as she actually performed it or as it is generally performed in the economy. (AR 323-24.) For this reason, this claim is rejected.

B. <u>The ALJ Properly Rejected The Treating Physician's Opinion</u>

Plaintiff contends that the ALJ erred when he rejected the opinion of Plaintiff's treating physician, Dr. Omar Bashir. (Joint Stip. 8-11, 16.) There is no merit to this contention.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that a treating physician's opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual'" (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))). For this reason, a treating physician's opinion regarding a claimant's medical condition that is well-supported and not inconsistent with other substantial evidence in the record will be given controlling

weight. *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  An ALJ may, however, reject the opinion of a treating physician that is contradicted by another physician for "'specific and legitimate reasons' supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In August 2004, Dr. Bashir began treating Plaintiff.  (AR 155.) In a "Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire" he filled out on May 25, 2006, Dr. Bashir opined, among other things, that Plaintiff's fatigue would frequently interfere with her attention and concentration.  (AR 263.)  He also believed that Plaintiff could not tolerate any work stress; could sit or stand for more than ten minutes at a time; could occasionally lift weights of ten pounds or less and never lift any heavier weights; could perform postural activities only rarely; and had significant limitations in performing repetitive reaching, handling, and fingering.  (AR 262-65.) In Dr. Bashir's view, Plaintiff had been unable to work in any capacity since 2003, due to her chronic fatigue.  (AR 262-63.)  Dr. Bashir also completed a "Work Capacity Evaluation (Mental)" form on November 3, 2008, in which he opined that Plaintiff had multiple mental/emotional limitations.  (AR 515-16.)

But Dr. Bashir's opinion was contradicted by other medical evidence.  For example, with regard to Plaintiff's physical capacity, an examining doctor determined that Plaintiff was not nearly as limited as Dr. Bashir found.  (AR 125-29.)  Further, a medical expert testified that Plaintiff could perform medium work, could sit for eight hours per day and stand or walk for six hours per day, with "no other restrictions."   (AR 289-90.)  As to Plaintiff's mental/

5

emotional capacity, even though a therapist diagnosed her with depression, there does not appear to be any evidence supporting the significant and pervasive limitations alleged by Dr. Bashir. (*See* AR 525-31.) Thus, where, as here, there was a conflict in the medical evidence, it was incumbent on the ALJ to resolve the conflict. *See Lester*, 81 F.3d at 830.

The ALJ did so by discounting Dr. Bashir's opinion because it: 1) was internally inconsistent, 2) was contradicted by Plaintiff's statements that she had "no problem" handling stress, 3) seemed to be based on an uncritical acceptance of Plaintiff's subjective complaints, 4) did not account for the fact that Plaintiff "worked for a significant number of years despite having the condition," and 5) was not supported by the doctor's treatment notes. (AR 19, 351 (citing AR 105).) These are specific and legitimate reasons for rejecting a treating doctor's report. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (internal quotation marks omitted)); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that an ALJ may reject the opinion of a treating physician whose own "treatment notes provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that "inconsistencies and ambiguities noted by the ALJ represent specific and legitimate reasons" for rejecting a physician's opinion); *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989) (upholding ALJ's rejection of treating physician's opinion that

contradicted the claimant's own testimony).  And these reasons are supported by substantial evidence in the record.[1]

Plaintiff also challenges the ALJ's rejection of Dr. Bashir's opinion of her mental limitations.  (Joint Stip. 10-11.)  The ALJ rejected this opinion because:  1) "Dr. Bashir does not appear to have specialized training or expertise in the mental health field," and 2) "his opinions on mental health issues are even more dependent upon [Plaintiff's] self-reports," which the ALJ did not find credible.  (AR 353.)  These, too, are legitimate reasons for discounting a doctor's opinion, *see Kennelly v. Astrue*, 313 Fed. Appx. 977, 978 (9th Cir. 2009) (holding that an ALJ "provided a 'specific and legitimate' reason for crediting the nonexamining psychiatrists over an examining internal medicine practitioner" by noting that the practitioner "was not a mental health specialist"); *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (internal quotation marks omitted)); and are supported by the evidence.

Further, even assuming that they were not legitimate reasons to question Dr. Bashir's findings, any error would be harmless because it

---

[1] The ALJ also rejected Dr. Bashir's opinion because it was not supported by objective medical evidence.  Generally speaking, this is not a legitimate reason for rejecting a doctor's opinion regarding chronic fatigue syndrome.  *Putz v. Astrue*, 371 Fed. Appx. 801, 802 (9th Cir. 2010) ("[A claimant] need not present objective medical evidence to demonstrate the severity of her fatigue." (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  But, because the ALJ's other five reasons for discounting Dr. Bashir's opinion are valid, any error here was harmless.  *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (noting ALJ's error is harmless if it was inconsequential to his ultimate disability determination).

did not affect the ultimate disability decision in this case. *Stout,* 454 F.3d at 1054 (noting ALJ's error is harmless if it was inconsequential to the ultimate disability determination). Dr. Bashir's opinion that Plaintiff's mental impairments precluded her from working was from November 2008. The first time Plaintiff went for mental health treatment was in January 2009. (AR 522-31.) Giving her the benefit of any doubt, the ALJ determined that Plaintiff's mental impairments precluded her from working beginning in October 2008. Nothing in Dr. Bashir's November 2008 report establishes that Plaintiff's mental impairments precluded her from working prior to November 2008. Thus, even if the ALJ had accepted this opinion, it would not have changed his ultimate determination that Plaintiff was disabled as of October 2008. Therefore, any error on the ALJ's part in rejecting the opinion would have been harmless. *Stout,* 454 F.3d at 1054.

C.  The ALJ Properly Assessed Plaintiff's Residual Functional Capacity for the Period Prior to October 1, 2008

Finally, Plaintiff argues that the ALJ erred by omitting a limitation for work "requiring safety operations or the responsibility for the safety of others or work requiring hypervigilance" from the residual functional capacity for the period before October 1, 2008. (Joint Stip. 14-16.) Plaintiff points out that Dr. Bashir's opinions in his "Chronic Fatigue Syndrome Questionnaire" from May 2006 and his "Work Capacity Evaluation (Mental)" form from November 2008, both of which are discussed above, support this limitation. (Joint Stip. 14-15.) As discussed above, however, the ALJ properly rejected Dr. Bashir's opinions. Thus, he was not required to consider Dr. Bashir's limitations in the residual functional capacity analysis.

Further, there is no evidence that Dr. Bashir's November 2008 opinion applies retroactively to the period before October 1, 2008. Accordingly, the ALJ did not err by failing to include a limitation for safety and hypervigilance from Plaintiff's pre-October 2008 residual functional capacity assessment.

## IV. CONCLUSION

For these reasons, the Court concludes that the Agency's findings are supported by substantial evidence and are free from material legal error. As such, the decision is affirmed.

IT IS SO ORDERED.

DATED: September 27, 2011.

*[signature: Patrick J. Walsh]*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\RUNKLE, T 1983\Memo_Opinion.wpd